Case 6:14-cv-00054-C-BL Document 15 Filed 01/11/16 Page 1 of 13 PageID 577

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 JAN 11 PM 4:08

DEPUTY CLERK _____

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| SCOTT PETER JULIAN, § | | |
| Plaintiff, § | | |
| v. § | Civil Action No. 6:14-CV-054-BL | |
| CAROLYN W. COLVIN, § Acting Commissioner of Social Security, § | | |
| Defendant. § | Referred to U.S. Magistrate Judge | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Scott Julian seeks judicial review of the decision of the Commissioner of Social Security (Commissioner), who denied his application for a period of disability (POD) and disability insurance benefits (DIB) under Title II of the Social Security Act (Act). The United States District Judge reassigned the case to this Court pursuant to 28 U.S.C. § 636(c). (Doc. 4). The parties have not consented to proceed before a United States Magistrate Judge. After considering all the pleadings, briefs, and administrative record, this Court recommends the decision of the Commissioner be affirmed and this case be dismissed.

### I. STATEMENT OF THE CASE

Plaintiff protectively filed his applications for a POD and DIB on September 30, 2011, alleging disability beginning on December 15, 2009.[1] His applications were denied initially May 2, 2012, and again on reconsideration July 5, 2012. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on May 15, 2013. Plaintiff was found not disabled on May 31, 2013. Plaintiff appealed to the Appeals Council, which denied review on June 20, 2014.

---

[1] At the administrative hearing, Plaintiff amended his alleged onset date to April 9, 2012.

1

Therefore, the third ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## II. FACTUAL BACKGROUND

According to his pleadings and testimony at the administrative hearing, Plaintiff was forty-six years old at the time of his administrative hearing. He was single and lived with a roommate in a house. He last worked as a general manager at an IHOP restaurant, though he also has past work experience as a waiter and cashier/checker. He claims he cannot work now due to a combination of physical and mental impairments. Plaintiff alleges he suffers from anxiety and panic attacks. He testified to bouts of paranoia and skepticism, even relating to his medical care team. He testified he has a difficult time leaving the house on occasion, and this makes it difficult to hold down a job. Additionally, Plaintiff testified to having numerous back problems from a combination of injuries sustained over the years. Plaintiff claims his physical and mental impairments render him disabled under the Act.

## III. STANDARD OF REVIEW

A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis

to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the Court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d

at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## IV. DISCUSSION

Plaintiff raises three issues on appeal. He claims the ALJ: gave improper weight to the opinions of treating physician Valerie Burgess, M.D.; failed to properly evaluate Plaintiff's credibility; and relied on flawed testimony from the Vocational Expert (VE).

### A. Treating Physician Opinion

In considering whether a claimant is disabled, the Commissioner considers the medical evidence available, including medical opinions. *See* 20 C.F.R. § 404.1527(b). Medical opinions may come from treating sources (for example primary care physicians), non-treating sources (for example physicians who complete a single examination with the claimant), or non-examining sources (for example a physician who reviews only the claimant's paper record). *See generally* 20 C.F.R. §§ 404.1502, 416.902. Courts in this circuit "have long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Even "[t]he treating physician's opinions, however, are far from conclusive. The ALJ has the sole responsibility for determining the claimant's disability status." *Id.*; *see Paul v. Shalala*, 29 F.3d 208, 2011 (5th Cir. 1994). When good cause is shown, an ALJ may assign little weight or even no weight to a treating source opinion. *Greenspan*, 38 F.3d at 237. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the

evidence." *Newton*, 209 F.3d at 456. The regulations list factors which "an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to controlling weight." *Id.* (internal quotation marks omitted). These factors include: examining relationship (as mentioned above—whether the medical opinion is from a treating source, non-treating source, or non-examining source); treating relationship (including length and frequency of treatment, as well as nature and extent of treatment); supportability; consistency; specialization; and other factors which support or contradict the opinion. *See id.* The ALJ must consider these factors because, as the Fifth Circuit Court of Appeals has stated, "[t]he ALJ cannot reject a medical opinion without an explanation." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000).

Though the ALJ must consider these factors, "*Newton* requires only that the ALJ 'consider' each of the [§ 404.1527] factors and articulate good reasons for its decision to accept or reject the treating physician's opinion. The ALJ need not *recite* each factor as a litany in every case." *Jeffcoat v. Astrue*, 2010 WL 1685825, at *3 (N.D. Tex. April 23, 2010) (internal citations and quotation marks omitted) (emphasis added).

Here, Plaintiff claims the ALJ gave too little weight to the opinions of Dr. Burgess, as contained in three documents compiled on two separate days. On June 27, 2012, Dr. Burgess completed a "Residual Functional Capacity Questionnaire." On November 29, 2012, Dr. Burgess completed a second RFC questionnaire as well as a "Mental Capacity Assessment." Pl.'s Br. 14–20. The RFC questionnaire is essentially a fill in the blank and check-box form. The Mental capacity assessment is almost entirely a check-box form which lists an area of functioning then provides six boxes for the medical professional to check, representing the degree of limitation a from which patient suffers (*e.g.*, the functional prompt "[Patient's] ability to understand and

remember very short and simple instructions" followed by the option boxes, "None, Slight, Moderate, Marked, Extreme, Unknown").

As to the June RFC questionnaire, which largely concerns Plaintiff's physical impairments, Dr. Burgess noted in part she thought that Plaintiff: could walk less than one city block without rest or significant pain; could sit fifteen minutes and stand/walk thirty minutes at one time; could sit three hours and stand/walk four hours in an eight-hour workday; required a job which allowed shifting positions from sitting, standing or walking and allowed unscheduled breaks in an eight-hour workday, every hour for five to ten minutes; and could occasionally lift and carry less than ten pounds. *See* Tr. 378. Dr. Burgess opined Plaintiff was limited in reaching with his arms to twenty-five percent of an eight-hour workday. Tr. 379. Finally, Dr. Burgess estimated that Plaintiff would be absent from work as a result of his impairments or treatments more than four times per month. *Id.*

As to the November RFC questionnaire, completed on the same form as the June RFC questionnaire, Dr. Burgess retained some of her opinions and changed some compared to the June assessment. The changes in November questionnaire reflect that Plaintiff: could walk zero city blocks without rest or significant pain; could stand/walk twenty minutes at one time; could sit four hours in an eight-hour work day; required a job which allowed unscheduled breaks once per hour for ten minutes. Tr. 421. Dr. Burgess opined Plaintiff could never lift less than ten pounds, and was limited in reaching with his arms to ten percent. Tr. 422.

As to the November mental capacity assessment, which largely concerns Plaintiff's mental impairments, Dr. Burgess indicated the following levels of limitation as to Plaintiff: moderate limitations in the ability to maintain attention and concentration for extended periods; marked limitations in the ability to perform activities within a schedule, maintain regular attendance, and

6

be punctual within customary tolerances; marked limitations in the ability to sustain an ordinary routine without special supervision; marked limitations in the ability to complete a normal workday without interruptions from psychologically based symptoms; extreme limitations in the ability to complete a normal workweek without interruptions from psychologically based symptoms; marked limitations in the ability to perform at a consistent pace with a standard number and length of rest periods. Tr. 417–18. Dr. Burgess again anticipated that Plaintiff would be absent from work more than four times per month. Tr. 418.

The ALJ explicitly referenced, discussed, and analyzed these three documents completed by Dr. Burgess. Tr. 27. As Plaintiff points out, following the ALJ's discussion of these documents, the ALJ writes Dr. Burgess's opinion "is given little weight as it is extreme and is not consistent with the medical evidence of record as a whole or with the doctor's records. Specifically, Dr. Burgess continued to note the claimant's mood and affect were within normal limits and his gait was within normal limits with normal range of motion of his extremities." *Id.*

Discerning that the treating physician's opinions were not entitled to controlling weight, it was incumbent upon the ALJ to consider the § 404.1527 factors to determine what weight to give the treating physician's opinions. It is plain the ALJ was aware that Dr. Burgess's treatment relationship with Plaintiff spanned a length of time—the ALJ examined and cited to treatment records covering at least two years. *Id.* It is further plain the ALJ was aware of the examining relationship Dr. Burgess shared with Plaintiff. *Id.* The supportability factor was the factor the ALJ spent the most time and space on. *See* Tr. 22–27. The ALJ canvassed the record to form a longitudinal picture of Plaintiff's limitations. This longitudinal picture included objective findings of, and subjective complaints made to, Dr. Burgess. *See* Tr. 27. It was this longitudinal picture against which the ALJ juxtaposed the opinions of Dr. Burgess, ultimately deciding to give the

opinions little weight as they did not harmonize with the objective findings, including the objective findings of Dr. Burgess herself. Tr. 22–27.

For example, following a back injury in August 2011, Plaintiff reported the ability to lift a lawnmower in April 2012, and an examination noted full range of motion in all extremities, normal flexion and rotation, normal muscle sensation testing of the lower extremities, no cyanosis or medal edema, no radiculopathy or pain radiation, and normal gait. *See* Tr. 24. In May 2012, Plaintiff reported his back pain was stable and he was taking medication when needed. Tr. 24, 437–64. In June 2012, examination showed Plaintiff had normal gait, normal range of motion in all extremities; in July 2012, Plaintiff reported his back pain was okay. Tr. 24. Examinations in August and October 2012 showed the same results. In November 2012, Plaintiff presented to the hospital claiming he had injured his back after lifting a can of paint a few days earlier. *Id.* However, hospital medical staff reported that Plaintiff ambulated independently, had full range of motion above and below the injury site, and was stable upon discharge. *Id.* Hospital records further indicate no motor deficits, sensory deficits, weakness, or gait disturbance, and normal joint range of motion, normal extremity range of motion and normal gait with no swelling or deformities. Tr. 24, 423–64. Finally, Plaintiff complained of back in April 2013, but noted he was not taking his medication and examination revealed normal gait, normal range of motion, and no cyanosis or pedal edema. Tr. 24, 470–74. In regard to Plaintiff's complained-of back pain then, the objective medical findings do not support a finding of disability to the degree that Plaintiff alleges. The case is the same as to Plaintiff's other physical impairments and mental impairments. *See* Tr. 22–27. The pattern of objective medical evidence pointing to a less severe limitation than Dr. Burgess's three documents continues to appear. This fact strikes against the supportability factor, as well as the consistency factor, of Dr. Burgess's opinions. *Id.*

In sum, Plaintiff's claim that the ALJ gave improper weight to Dr. Burgess's opinions and failed to consider the § 404.1527 factors is an unfounded claim. The Court recommends the decision of the Commissioner as to this point be affirmed.

### B. Evaluating Plaintiff's Credibility

In determining a claimant's RFC, the regulations require the ALJ to first determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms. Once that is determined, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. *See generally* 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929. When statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by the objective medical evidence, the ALJ must make a credibility determination of the statements based on a consideration of the entire case record. The ALJ's credibility determination will include the following factors: a claimant's daily activities; the location, duration, frequency, and intensity of a claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication a claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, a claimant has received; any measure a claimant has used to relieve pain or other symptoms; and other factors concerning a claimant's functional limitations and restrictions caused by pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c). "Failure to indicate the credibility choices made and the basis for those choices in resolving the crucial subsidiary fact of the truthfulness of the subjective symptoms and complaints requires reversal and remand." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (citing *Hayes v. Celebrezze*, 311 F.2d 648, 653–54 (5th Cir. 1963)); *see also* SSR 96-7p, 1996 WL 374186

(July 2, 1996) (The ALJ must "make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."). Nonetheless, the ALJ has discretion in making his credibility determinations, and "[h]ow much pain is disabling is a factual determination for the ALJ." *Adams v. Astrue*, 340 F.App'x 219, 221 (5th Cir. 2009) (unpublished) (*per curiam*); *see also Carrier v. Sullivan*, 944 F.2d 243 (5th Cir. 1991). An ALJ need not explicitly list each factor; instead what is required is findings that are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p.

Here, the ALJ made findings that were sufficient under applicable statutory and case law. First, the ALJ spelled out the relevant legal standard. Tr. 22–23; *see Waters*, 276 F.3d at 718. After finding there was an underlying medically determinable physical or mental impairment that could be expected to produce pain or other symptoms, the ALJ conducted a detailed discussion of the appropriate factors. Tr. 20–27. The ALJ discussed Plaintiff's activities of daily living. Tr. 20, 23 (noting Plaintiff would "pick up around the house, bathe and dress himself, drive without difficulty, cook without difficulty, fish, and complete tasks as needed); Tr. 23 (noting Plaintiff "could walk two blocks, drive, pay bills, count change, handle a savings account, use a checkbook and money order, clean the house with help, and prepare simple meals.").

The ALJ discussed the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms. Tr. 23 (noting complaints of back pain); Tr. 24 (noting the duration and frequency of Plaintiff's impairments); Tr. 24 (noting the apparent intensity of Plaintiff's complaints).

The ALJ discussed precipitating and aggravating factors to Plaintiff's impairments. Tr. 23 (noting the effects when Plaintiff would cease to take his prescribed medication or skip scheduled medical appointments).

The ALJ discussed the type, dosage, effectiveness, and side effects of Plaintiff's medication. *See, e.g.*, Tr. 23 (noting instances where Plaintiff would cease to take his anxiety and depression medication, and the effect those decisions would have); Tr. 25 (same); Tr. 26 (noting positive effects when Plaintiff stuck to his prescribed routine of Diazepam).

As to treatment, other than medication, that Plaintiff had received, it is not obvious the ALJ discussed this factor. As Plaintiff points out, he underwent "trigger point injections, massages, and Robaxin." Pl.'s Br. 21. However, as Defendant points out, any failure on the ALJ's part to discuss this factor constitutes at worst harmless error as it does not compromise the ALJ's ultimate conclusion. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). In fact, such evidence appears to support Defendant's position in this litigation more than it supports Plaintiff's. After "trigger point injections, Robaxin, . . . and massage," Plaintiff reported "almost complete improvement of his muscle spasm in his back." Tr. 311. Additionally, Plaintiff stated such treatments "really improved his spasm and improved his pain," and the medical professional indicated: "The trigger point injections initially when I first saw him did help as well and it has been 5 weeks of improvement, but the last couple of weeks have been very significant and the patient is very thrilled with his current results." *Id.* Therefore, any failure by the ALJ to not discuss treatment, other than medication, that Plaintiff had received, such failure is harmless and does not require reversal or remand.

Finally, the ALJ discussed measures Plaintiff used to relieve pain. Tr. 23 (noting Plaintiff's use of a back brace, heating pad, stretching exercises, and physical therapy). In all, it is clear that the ALJ properly considered Plaintiff's credibility. The ALJ discussed each of the required factors, except perhaps Plaintiff's experience with trigger point injections, massages, and Robaxin. As noted, however, this omission by the ALJ is, at its most serious, harmless error because

consideration of these treatments actually weakens Plaintiff's stance before the Court. Even had the ALJ considered these treatments, it is "inconceivable that the ALJ would have reached a different conclusion" than the one he did. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). On this point Plaintiff's argument is unavailing.

### C. VE Testimony

As his third point of error, Plaintiff claims that because of the errors the ALJ made in points one and two, the ALJ's hypothetical to the VE was incomplete. Pl.'s Br. 22–23. However, because the Court determines the ALJ made no errors, the Court must conclude that Plaintiff's third point of error is groundless. The Court discerns no infirmity with the ALJ's hypothetical to the VE, nor any infirmity with the VE's testimony. The hypothetical reasonably incorporated all of the disabilities recognized in the ALJ's RFC assessment, *see Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994), and it is uncontested that the VE's testimony was consistent with the Dictionary of Occupational Titles. Plaintiff's argument here must fail.

### V. CONCLUSION

In sum, Plaintiff presents three issues on appeal before this Court. None are persuasive. Substantial evidence supports the ALJ's determinations in this case. *See Perales*, 402 U.S. 389. As such, the Commissioner's decision is conclusive and must be upheld. *Paul*, 29 F.3d at 210. Considering the foregoing, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file

specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated January  11 , 2016.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**